**FEDERAL DEPOSIT INSURANCE CORPORATION, Plaintiff,**

v.

Louis W. GRANT, Jr., Charles B. Grant, J. Lawrence Mills, Jr., Keith R. Gollust, Paul E. Tierney, Jr., Edward L. Jacoby, Rod L. Reppe, Donald Bergman, William M. Brumbaugh, Edward H. Hawes, James R. Malone, Robert B. Riss, Robin K. Buerge, W.R. Hagstrom, and David M. Moffett, Defendants.

No. 92-C-1043-H.

United States District Court, N.D. Oklahoma.

Jan. 12, 1998.

1278

David L. Thomas, Karen Eby, Haswell Jones Hughey Vaughan & Thomas, Oklahoma City, OK, Douglas Nelson Gould, Lyle S. Vaughn, Oklahoma City, OK, Jay Fenton, Federal Deposit Insurance Corporation, Chicago, IL, Alan R. Clever, Resolution Trust Corp, Dallas, TX, for Federal Savings and Loan Insurance Corporation.

Sam P. Daniel, Jon E. Brightmire, Doerner Saunders Daniel & Anderson, Tulsa, OK, for Louis W. Grant, Jr., Charles B. Grant.

Sheila Miller Bradley, Dwayne C. Pollard, Theodore Jon Nelson, Joyce & Pollard, Tulsa, OK, for Lawrence Mills, Jr., W.R. Hagstrom.

Jody Rae Nathan, Joseph R. Farris, Tony Michael Graham, Feldman Franden Woodward & Farris, Tulsa, OK, Jonathan I. Blackman, Cleary Gottlieb Steen & Hamilton, Washington, DC, for Keith R. Gollust, Paul E. Tierney, Jr.

Edward L. Jacoby, Tulsa, Ok, pro se.

Roy D. Johnson, Roy D. Johnsen, Epperson & Johnson, Tulsa, OK, for Rod L. Reppe.

### ORDER

HOLMES, District Judge.

Before the Court for consideration is the Report and Recommendation ("Report") of the United States Magistrate Judge Sam A. Joyner (July 21, 1997, Docket # 324), recommending that the motion to dismiss, or alternatively, for summary judgment filed by Defendants Louis W. Grant, Jr. and Charles B. Grant (Docket # 75), and the motions for summary judgment filed by Defendants Keith R. Gollust and Paul E. Teirney (Docket # 76); Lawrence Mills, Jr., Edward L. Jacoby, and W.R. Hagstrom (Docket # 78); and Rod L. Reppe (Docket # 80) be denied. Defendants filed objections to the Report and Plaintiff responded to Defendants' objections. Defendants also filed a reply to Plaintiff's response.

When a party objects to the report and recommendation of a Magistrate Judge, Rule 72(b) of the Federal Rules of Civil Procedure provides in pertinent part that:

> [t]he district judge to whom the case is assigned shall make a de novo determination upon the record, or after additional evidence, of any portion of the magistrate judge's disposition to which specific written objection has been made in accordance with this rule. The district judge may accept, reject, or modify the recommendation decision, receive further evidence, or recommit the matter to the magistrate judge with instructions.

Fed.R.Civ.P. 72(b).

The Court has reviewed Defendants' objections to the Report de novo and, based upon the reasoning and authority contained in the Report, the Court concludes that Defendants' objections are without merit. The Court

agrees with Judge Joyner's conclusion that the Northtown Investors loans are properly in this lawsuit and that Oklahoma law provides a two year statute of limitations for negligence and contract actions, and a three year statute of limitations on actions alleging a breach of fiduciary duty. Further, the Court agrees that the statute of limitations begins to run once it becomes certain and not speculative that Sooner Federal would suffer damages as a result of Defendants' acts of negligence or breach. Finally, the Court agrees that genuine questions of material fact remain for jury determination as to "what breaches of duty caused harm to Sooner Federal for a particular loan, when those breaches occurred, and when the harm caused by those breaches was certain to occur." Report at 33.

As described above, based upon a careful review of the Report and Recommendation of the Magistrate Judge, Defendants' objections, Plaintiff's response, and Defendants' reply, the Court finds that the Report and Recommendation (Docket # 324) should be adopted in its entirety. Thus, Defendants' motions for summary judgment (Docket # 75, 76, 78, 80) are hereby denied.

IT IS SO ORDERED.

JOYNER, United States Magistrate Judge.

### REPORT AND RECOMMENDATION

The following motions have been referred to the undersigned for report and recommendation:[1]

1. "Motion to Dismiss or, In the Alternative, Motion for Summary Judgment ... of Defendants Louis W. Grant, Jr. and Charles B. Grant" [Doc. No. 75];[2]

2. "Motion for Summary Judgment of Defendants, Gollust and Tierney" [Doc. No. 76];[3]

3. "Motion for Summary Judgment of Defendants J. Lawrence Mills, Jr.,

Edward Jacoby and W.R. Hagstrom" [Doc. No. 78];[4] and

4. "Motion for Summary Judgment of Defendant Rod L. Reppe" [Doc. No. 80].[5]

Messrs. Gollust, Grant, Hagstrom, Jacoby, Mills, Reppe and Tierney (hereinafter referred to as the Defendants) argue that Plaintiff's claims against them must be dismissed because (1) the applicable statute of limitations bars Plaintiff's claims, (2) Plaintiff is estopped from asserting its current accrual argument in connection with the applicable statute of limitations, and/or (3) various loans identified by Plaintiff for the first time in its November 11, 1993 court-ordered Disclosure Report cannot be asserted in this case. For the reasons discussed below, the undersigned recommends that Defendants' motions be **DENIED**.

### I. INTRODUCTION

Defendants were inside officers and/or directors of Sooner Federal Savings and Loan Association ("Sooner Federal"), a federally chartered, federally insured depository institution. Defendants have previously been referred to in this litigation as the nongroup I/inside directors. Plaintiff seeks to hold Defendants liable for loans approved, made and/or supervised by Defendants. Plaintiff alleges that by making, approving and/or supervising the loans, Defendants (1) were negligent, (2) breached their contract with Sooner Federal to serve as prudent officers and directors, and/or (3) breached their fiduciary duty to Sooner Federal. *See* Second Amended Complaint, Counts I, II and III, Doc. No. 35. Defendants argue that under all of the theories of liability asserted by Plaintiff, a claim based on a bank officer's or director's making, approving and/or supervising a loan accrues when the bank disburses the loan proceeds (i.e., when the loan is made). Under Defendants' accrual theory, most, if not

---

1. *See* 28 U.S.C. § 636; Fed.R.Civ.P. 72; and N.D. LR 72.1.

2. *See* Doc. Nos. 75, 88, 89, 94, 225, 228, 269, 280, 296, 312 & 315.

3. *See* Doc. Nos. 76, 77, 88–90, 97, 113, 117, 198, 201, 227, 278, 294, 296, 313, 315 & 316.

4. *See* Doc. Nos. 78, 79, 88–90, 93, 198, 226, 279, 282, 296, 312, 314 & 315.

5. *See* Doc. Nos. 80, 81, 88–90, 198.

all, of Plaintiff's claims would be barred by the applicable statute of limitations.

## A. *FIRREA's Application*

By late 1989, Sooner Federal was in trouble and on November 16, 1989, the Department of the Treasury's Office of Thrift Supervision ("OTS") appointed the Federal Deposit Insurance Corporation ("FDIC")[6] as conservator for Sooner Federal pursuant to the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), 12 U.S.C. §§ 1441a(b), 1464(d)(2) and 1821(c)(6). *See* Exhibit D, Doc. No. 315. Pursuant to 12 U.S.C. § 1821(d)(2)(A)(i), the FDIC steps into the shoes of a failed, federally insured depository institution and thereby obtains those rights of the institution which existed prior to the conservatorship. *O'Melveny & Myers v. FDIC,* 512 U.S. 79, 114 S.Ct. 2048, 129 L.Ed.2d 67 (1994).

Ordinarily, the statute of limitations applicable to an action for money damages brought by the United States or one of its agencies is 28 U.S.C. § 2415. With FIRREA, Congress sought to strengthen the enforcement powers of Federal regulators of depository institutions. Consequently, FIRREA provides the FDIC with a special statute of limitations in its role as conservator of a failed depository institution. This special statute expands the limitations periods in § 2415. *See* 12 U.S.C. § 1821(d)(14). The applicable portion of FIRREA's special statute of limitations provides as follows:

(A) In general

Notwithstanding any provision of any contract, the applicable statute of limitations with regard to any action brought by the [FDIC/RTC] as conservator or receiver shall be—

(i) in the case of any contract claim, the longer of—

(I) the 6-year period beginning on the date the claim accrues; or

(II) the period applicable under State law; and

(ii) in the case of any tort claim ..., the longer of—

(I) the 3-year period beginning on the date the claim accrues; or

(II) the period applicable under State law.

(B) Determination of the date on which a claim accrues

For purposes of subparagraph (A), the date on which the statute of limitations begins to run on any claim described in such subparagraph shall be the later of—

(i) the date of the appointment of the [FDIC/RTC] as conservator or receiver; or

(ii) the date on which the cause of action accrues.

12 U.S.C. § 1821(d)(14).

The shortest limitations period in § 1821(d)(14) is three years from the date the FDIC/RTC is appointed as conservator. Plaintiff became Sooner Federal's conservator on November 16, 1989 and this lawsuit was filed less than three years later on November 13, 1992. Thus, all of Plaintiff's claims are timely under FIRREA's extended statute of limitations.

 Plaintiff must, however, pass one more hurdle for its claims to be considered timely. Plaintiff obtains the benefit of FIRREA's extended statute of limitations only if Plaintiff's claims were timely under state law on the date Plaintiff was appointed as conservator.[7] In other words, Plaintiff has the

---

**6.** The OTS originally appointed the Resolution Trust Corporation ("RTC") as Sooner Federal's conservator. However, pursuant to the Resolution Trust Corporation Completion Act, 12 U.S.C. § 1441a(m)(1) and (2), the RTC ceased to exist after December 31, 1995. As of January 1, 1996, all assets and liabilities of the RTC were transferred to the FDIC as manager of the FSLIC Resolution Fund. *See* 12 U.S.C. § 1821a(a)(1). The FDIC has previously been substituted for the RTC as the Plaintiff in this action. A reference to the FDIC shall also be a reference to the RTC for that period of time when the RTC was in control of this litigation.

**7.** *FDIC v. Regier Carr & Monroe,* 996 F.2d 222, 225–26 (10th Cir.1993) (holding that FIRREA's longer limitations periods cannot be applied retroactively to revive claims that are already barred by a state statute of limitations before the FDIC is appointed); *FDIC v. Thayer Ins. Agency, Inc.,* 780 F.Supp. 745 (D.Kan.1991); *FDIC v. Farris,* 738 F.Supp. 444 (W.D.Okla.1989); *FDIC v. Cocke,* 7 F.3d 396 (4th Cir.1993), *cert. denied* 513 U.S. 807, 115 S.Ct. 53, 130 L.Ed.2d 12 (1994); *Randolph v. RTC,* 995 F.2d 611, 619 (5th Cir.1993), *cert. denied* 510 U.S. 1191, 114 S.Ct. 1294, 127 L.Ed.2d 647 (1994); *FDIC v. Shrader & York,* 991 F.2d 216, 220 (5th Cir.1993), *cert.*

benefit of § 1821(d)(14)'s longer statute of limitations only if its claims against Defendants were timely under Oklahoma law on November 16, 1989, the date Plaintiff was appointed as Sooner Federal's conservator. The parties agree that this is the law. Because they each have different views as to when Plaintiff's claims "accrue" under Oklahoma law, the parties disagree on the issue of whether Plaintiff's claims would have been timely under Oklahoma law on November 16, 1989. Thus, Defendants' motions present the following central issue: What statute of limitations does Oklahoma apply to Plaintiff's negligence, breach of contract and breach of fiduciary duty claims and when do those claims "accrue" for purposes of the applicable Oklahoma statute of limitations?

## B. EFFECT OF THE UNITED SUPREME COURT'S HOLDINGS IN ATHERTON AND O'MELVENY

During the course of this litigation, the United States Supreme Court has decided two cases which dramatically impact cases brought by the FDIC. *See O'Melveny & Myers v. FDIC*, 512 U.S. 79, 114 S.Ct. 2048, 129 L.Ed.2d 67 (1994); and *Atherton v. FDIC*, 519 U.S. 213, 117 S.Ct. 666, 136 L.Ed.2d 656 (1997). Both of these cases reinforce the holding in *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) that there is no general federal common law.[8] Ordinarily, the States have the authority to regulate activity within their borders. Federal common law rules are acceptable only when there is a "significant conflict between some federal policy or interest and the use of state law." *O'Melveny*, 114 S.Ct. at 2055. Both *Atherton* and *O'Melveny* establish, however, that the remote possibility that a federal corporation, such as a savings and loan, might wind up in a federal receivership or conservatorship does not provide a basis for creating special federal common law rules. In *O'Melveny*, the Court made it clear that the FDIC steps into the shoes of an insolvent savings and loan to work out the savings and loans' claims under state law, "except where some provision in the extensive framework of FIRREA provides otherwise." *O'Melveny*, 114 S.Ct. at 2054. Thus, the FDIC's claims in this case are governed by Oklahoma law, not by general federal common law, unless Oklahoma law conflicts with FIRREA or some other federal statutory provision.

## C. PLAINTIFF'S ABANDONMENT OF LOAN CLAIMS

In its Second Amended Complaint, Plaintiff identifies 35 loans which it alleges were improperly approved, made and/or supervised by Defendants. *See* Doc. No. 35, ¶ 38. Throughout the course of litigation, however, Plaintiff has abandoned several of these loan claims. *See* Doc. Nos. 269 and 315. The following table identifies (1) the remaining loan claims being asserted by Plaintiff, (2) the Defendant against whom each loan claim is being asserted, and (3) the date each loan was made.

---

denied 512 U.S. 1219, 114 S.Ct. 2704, 129 L.Ed.2d 832 (1994); *FDIC v. McSweeney*, 976 F.2d 532, 534 (9th Cir.1992), *cert. denied* 508 U.S. 950, 113 S.Ct. 2440, 124 L.Ed.2d 658 (1993); *RTC v. Artley*, 28 F.3d 1099 (11th Cir. 1994); *RTC v. Krantz*, 757 F.Supp. 915, 921 (N.D.Ill.1991) (reasoning that a literal reading of § 1821(d)(14) would allow the FDIC to "revive claims relating to acts done during the Great Depression" by merely taking over a depository institution); *FDIC v. Howse*, 736 F.Supp. 1437, 1447 (S.D.Tex.1990) (holding that the period provided in § 1821(d)(14) begins to run when the FDIC is appointed, as long as the state limitations period has not already expired).

8. As discussed here, "'federal common law' is a rule of decision that amounts, not simply to an interpretation of a federal statute or a properly promulgated administrative rule, but, rather, to the judicial 'creation' of a special federal rule of decision." *Atherton*, 117 S.Ct. at 670.

| Loan | Date of Loan | Grant, C. | Grant, L. | Jacoby | Mills | Hagstrom | Gollust | Tierney | Reppe |
|---|---|---|---|---|---|---|---|---|---|
| Tandem—Cushing | 06–28–82 10–27–83 12–28–84 | X | X | X | X | X | | | |
| Northtown Investors I * | 08–24–82 | X | X | X | X | X | | | |
| FHSC—Intrapark | 07–10–84 | X | X | X | X | X | | | |
| Mager/OPI—Rolling Hills I | 09–13–84 | X | X | X | X | X | | | |
| Tandem—Reppe | 12–04–84 | X | X | X | X | X | | | |
| Tandem—Cherry Street | 06–10–85 | | | X | X | X | X | X | X |
| Northtown Investors II * | 10–31–86 | | | X | X | X | X | X | X |

### Three Years Before FDIC's Appointment as Conservator (11/16/86)

| Loan | Date of Loan | Grant, C. | Grant, L. | Jacoby | Mills | Hagstrom | Gollust | Tierney | Reppe |
|---|---|---|---|---|---|---|---|---|---|
| FHSC—Hunter's Hills | 05–13–87 | | | X | X | X | | | X |
| Mager/OPI—Rolling Hills II | 11–05–87 | | | X | X | X | | | X |

### Two Years Before FDIC's Appointment as Conservator (11/16/87)

### FDIC Appointed as Conservator (11/16/89)

* Defendants allege that the two Northtown Investors loans are not properly part of this lawsuit because Plaintiff did not list these loans in its original or amended complaints. Defendants allege that they first became aware that Plaintiff would seek to hold them liable for the Northtown Investors loans when Plaintiff listed them in its November 11, 1993 court-ordered Disclosure Report. [Doc. No. 311]. This issue will be discussed in section IV, *infra*.

### D. HISTORY OF DEFENDANTS' MOTIONS

This case was filed and assigned to Judge Thomas R. Brett in November 1992. Defendants' statute of limitations motions were filed in January 1994. Shortly after Defendants' motions were filed, this case was transferred to Judge Lee R. West in the Western District of Oklahoma, due to the recusal of all judges in this district. *See* 1/25/94 Minute Order by Judge Brett. In August 1994, after Judge Terry C. Kern's recent appointment to the Northern District of Oklahoma, the case was transferred back to the Northern District and assigned to Judge Kern. [Doc. No. 222].

#### 1. Original Briefs: The Adverse Domination Doctrine

In their original statute of limitations briefs, the parties focused primarily on the doctrine of adverse domination. Under the adverse domination doctrine, the statute of limitations on a corporation's claim against its officers and/or directors is equitably tolled while the corporation's board of directors is controlled by culpable directors. The underlying premise of the adverse domination doctrine is that a corporation acts through its board of directors and a board of directors controlled by culpable directors will not cause the corporation to bring a lawsuit against themselves. *See RTC v. Thomas*, 837 F.Supp. 354, 358 (D.Kan.1993). The parties focused on the adverse domination doctrine because at the time they filed their original briefs, the "principal controlling precedent" was the Tenth Circuits pre-FIRREA decision in *Farmers & Merchants Nat'l Bank v. Bryan*, 902 F.2d 1520 (10th Cir. 1990).

In *Bryan*, the FDIC sued former officers and directors of a national bank for making imprudent loans. The officers and directors argued that the statute of limitations had run on several of the loan claims being asserted by the FDIC. The FDIC argued that its loan claims were not barred by the applicable statute of limitations because defendants had adversely dominated the bank's board of directors and such domination acted to equita-

bly toll the statute of limitations for as long as defendants controlled the bank's board of directors. To resolve the issues on appeal, the Tenth Circuit began by holding that the determination of when the FDIC's claims accrued for purposes of the applicable statute of limitations [9] and whether the applicable statute of limitations was equitably tolled were questions to be answered by looking to federal common law, not state law. *Bryan,* 902 F.2d at 1522.

Applying federal common law, the Court in *Bryan* held that "a cause of action on an improper loan accrues at the time the loan is made." *Bryan,* 902 F.2d at 1522 (citing *Corsicana Nat'l Bank of Corsicana v. Johnson,* 251 U.S. 68, 86, 40 S.Ct. 82, 64 L.Ed. 141 (1919)). The Court also held that federal common law recognized the doctrine of adverse domination as an equitable doctrine which could be used by the FDIC to toll the statute of limitations. *Id.* From the chart in section I(C), *supra,* it is clear that if, as *Bryan* held, Plaintiff's loan claims accrue on the date the loans were made, most of Plaintiff's loans claims in this case would be barred by the statute of limitations, unless the statute of limitations was tolled by the adverse domination doctrine. So, in their original briefs, Plaintiff and Defendants spent most of their time arguing about whether or not the doctrine of adverse domination applies in this case and, if it does, what level of domination by the culpable directors Plaintiff is required to prove.

By the time Judge Kern received the case in the late summer of 1994, the United States Supreme Court had rendered its decision in *O'Melveny & Myers v. FDIC,* 512 U.S. 79, 114 S.Ct. 2048, 129 L.Ed.2d 67 (1994). In September 1994, Judge Kern ordered the parties to file supplemental briefs to discuss the affect of *O'Melveny* on the statute of limitations issues raised by the parties. Again, the parties' briefs focused on the adverse domination doctrine, arguing whether or not *O'Melveny* affected the Tenth Circuit's decision in *Bryan* to adopt the doctrine of adverse domination as part of the federal common law. Plaintiff argued that *O'Melveny* left *Bryan* undisturbed. Defendants argued that *O'Melveny* required the Court to look to Oklahoma law, not federal common law, and Oklahoma law did not recognize the doctrine of adverse domination.

As discussed above, the Supreme Court in *O'Melveny,* and later in *Atherton,* greatly restricted the instances in which federal courts are permitted to create rules of decision under federal common law. Judge Kern found that the Supreme Court's decision in *O'Melveny* undermined the Tenth Circuit's conclusion in *Bryan* that application of the adverse domination doctrine would be controlled by federal common law, not state law. Judge Kern ordered the parties to address the need to certify questions regarding the adverse domination doctrine to the Oklahoma Supreme Court because Oklahoma had not squarely addressed the adverse domination doctrine. [Doc. No. 229]. After receiving the parties' briefs, Judge Kern entered an order in December 1994 certifying to the Oklahoma Supreme Court questions of law relating to the adverse domination doctrine. [Doc. No. 240]. The Oklahoma Supreme Court was asked to decide whether Oklahoma law recognized the adverse domination doctrine and, if so, whether the doctrine would "delay accrual or toll the statute of limitations on [Plaintiff's claims] against corporate officers and directors while the wronged corporation is controlled by a majority of culpable directors and officers." [Doc. No. 240].

The Oklahoma Supreme Court answered the certified questions relating to the adverse domination doctrine in late June 1995. [Doc. Nos. 245 and 246]. The Oklahoma Supreme Court held that the doctrine of adverse domination is part of Oklahoma's common law, but that the doctrine only tolls the statute of limitations in those situations "involving fraudulent conduct exercised while the wronged corporation is controlled by a majority of culpable directors and officers." [Doc. No. 246]. *See RTC v. Grant,* 901 P.2d 807 (Okla.1995). In this case, Plaintiff has not alleged fraud on the part of Defendants. Therefore, Plaintiff concedes that the ad-

---

**9.** The applicable statute of limitations was Oklahoma's three-year statute of limitations found at 12 Okla. Stat. § 95, which the Court borrowed in the absence of a specific federal statute of limitations. *Bryan,* 902 F.2d at 1522.

verse domination doctrine does not apply to this case.

### 2. Supplemental Briefs: "Accrual" of the Statute of Limitations Under Oklahoma Law

■ In *Bryan*, the Tenth Circuit also held that the question of when a cause of action against an officer and/or director of a national bank "accrues" is a question of federal common law. The Tenth Circuit's accrual holding is no longer correct in light of *O'Melveny* and *Atherton*. *See* Section I(B), *supra*. As is the question of tolling by the adverse domination doctrine, the question of when a cause of action accrues is governed by state law, not federal common law. At the time Judge Kern certified questions to the Oklahoma Supreme Court, neither the parties nor the Court focused on the accrual issue or the incorrectness of *Bryan's* accrual holding in light of *O'Melveny*. Thus, the questions certified to the Oklahoma Supreme Court focused only on the adverse domination doctrine.

While the certified questions were pending, this case was dormant from December 1994 to October 1995. During this lull, the case was reassigned to Judge Sven Erik Holmes in March 1995. Judge Holmes ordered the parties to file a joint status report and in October 1995, all motions were referred to the undersigned for report and recommendation. [Doc. No. 249]. The undersigned held a status conference in December 1995.

At the December 1995 status conference, Plaintiff sought leave to file supplemental briefs in connection with Defendants' statute of limitation motions. For the first time, Plaintiff wanted an opportunity to brief the issue which had been ignored when questions relating to the adverse domination doctrine were certified to the Oklahoma Supreme Court. That is, Plaintiff wanted an opportunity to brief Oklahoma law regarding accrual of its negligence, contract and breach of fiduciary duty claims. Plaintiff wanted an opportunity to demonstrate that under Oklahoma law, its loan claims did not accrue for purposes of the Oklahoma statute of limitations when the loans were made, but when Sooner Federal suffered harm caused by Defendants' negligence. It is Plaintiff's position that Sooner Federal was not harmed, and,

therefore, its claims did not accrue on each loan until the loan at issue suffered an "event of default." The undersigned permitted briefing on the accrual issue and that briefing was filed in April 1996.

Oral argument on Defendants' statute of limitations motions was heard in October 1996. At oral argument, Defendants argued that even under Plaintiff's accrual theory, all of the loans at issue in this case suffered an "event of default" more than three years prior to the date the FDIC was appointed as Sooner Federal's conservator. Thus, Defendants argued that even under Plaintiff's accrual theory, all of Plaintiff's claims would be barred by the Oklahoma statute of limitations. To isolate the facts relating to "events of default" on each loan, the undersigned ordered the parties to file briefs indicating where in the record the Court could find the facts which established when each loan went into default. These "default" briefs were filed in November 1996. No additional briefing has been filed since that time, and Defendants' statute of limitations motions are finally at issue.

### II. EFFECT OF FDIC'S INCONSISTENT POSITIONS

■ Defendants argue that Plaintiff has done a dramatic flip flop on the accrual issue. That is, Defendants argue that before the Oklahoma Supreme Court decided the adverse domination issue against Plaintiff, Plaintiff agreed with Defendants' assertion that the loan claims in this case accrued when the loans were made. It was not until after the Oklahoma Supreme Court answered the adverse domination questions that Plaintiff advanced its current argument that under Oklahoma law its loan claims did not accrue when the loans were made, but when Sooner Federal suffered harm as a result of Defendants' actions (i.e., when the loans defaulted). Defendants accuse Plaintiff of keeping its accrual arguments in its hip pocket until Plaintiff saw how the Oklahoma Supreme Court would rule on the adverse domination doctrine. Defendants also argue that in light of Plaintiff's current accrual position, the certified questions to the Oklahoma Supreme Court were a waste of time and Judge Kern would never have certified questions if he had known Plaintiff would assert the ac-

crual position it is now asserting. Based on their view of Plaintiff's conduct, Defendants argue that Plaintiff is estopped from making its current accrual arguments.

■ The doctrine of judicial estoppel bars a party from adopting inconsistent positions in the same or related litigation. *United States v. 49.01 Acres of Land,* 802 F.2d 387, 390 (10th Cir.1986). In non-diversity cases, such as this, the Tenth Circuit has rejected the doctrine of judicial estoppel. *See Osborn v. Durant Bank & Trust Co.,* 24 F.3d 1199 (10th Cir.1994); *49.01 Acres of Land,* 802 F.2d at 390. The Tenth Circuit has reasoned that it is better to resolve cases on their merits. Courts should not decide cases on inaccurate or wrong propositions of law as a means of punishing a party. Any public policy against allowing parties to take inconsistent positions can be vindicated through avenues that do not discourage the determination of cases on their merits (e.g., sanctions). *49.01 Acres of Land,* 802 F.2d at 390. Thus, in this Circuit Plaintiff is not judicially estopped from presenting its current accrual arguments. *See also RTC v. Gregor,* 872 F.Supp. 1140, 1153 (E.D.N.Y. 1994) (rejecting the precise argument advanced by Defendants here).

The undersigned has reviewed the file and is convinced that in this case Plaintiff did not intentionally withhold its current accrual argument until after the Oklahoma Supreme Court's answers to the adverse domination questions. As discussed above, when Defendants' original statute of limitations motions were filed, the Tenth Circuit's decision in *Bryan* was the principal controlling authority. *Bryan* focused on the doctrine of adverse domination. So, the parties and the Court focused on the adverse domination doctrine. When it became clear that the United States Supreme Court's decision in *O'Melveny* undermined the Tenth Circuit's holding in *Bryan,* and the focus switched from federal common law to state law, the parties and the Court were still focused on the adverse domination doctrine. No one focused on the fact that *O'Melveny* also un-

dermined the Tenth Circuit's holding in *Bryan* that accrual was a matter of federal common law. It was not until after the Oklahoma Supreme Court rendered its decision that Plaintiff focused on the fact that accrual would also be governed by state law and not federal common law. It may be true that it was the defeat in the Oklahoma Supreme Court that caused Plaintiff to focus on the accrual issue. While that fact may merit an award of fees and costs to compensate for any resulting delay, it cannot prevent the Court from considering Plaintiff's arguments to determine the correct legal principles to be applied in this case.

### III. THE NORTHTOWN INVESTORS LOANS ARE PROPERLY IN THIS LAWSUIT

Plaintiff filed its original Complaint on November 13, 1992. [Doc. No. 1]. Plaintiff filed its First Amended Complaint on February 12, 1993. [Doc. No. 24]. Plaintiff filed its Second Amended Complaint on June 1, 1993. [Doc. No. 35].[10] In these complaints, Plaintiff listed 35 loans which it considered to have been imprudently authorized, made and/or supervised by Defendants. Plaintiff expressly stated that the list of 35 loans was a non-exhaustive list of "example" loans. [Doc. No. 1, ¶ 28; Doc. No. 24, ¶ 31; and Doc. No. 35, ¶ 38]. Neither the Northtown Investors I nor the Northtown Investors II loans were listed in either the original, first amended or second amended complaints.

Early on in this case, the parties had several case management conferences before Magistrate Judge John L. Wagner. Because this case is a document intensive case and because a majority of the documents relevant to this case are in Plaintiff's possession, Magistrate Judge Wagner ordered Plaintiff to prepare and file a disclosure report. [Doc. No. 60 and 6/25/93 Minute]. The disclosure report was designed to reduce the amount of discovery that would otherwise be necessary. Plaintiff served its court-ordered Disclosure Report on November 11, 1993. [Doc. No. 311].[11] The Northtown Investors loans,

10. The First Amended and Second Amended Complaints are identical to the original Complaint in all material respects. The amended complaints simply add parties whose tolling agreements with Plaintiff had expired.

11. The November 11, 1993 Disclosure Report was not filed by the parties until November 12, 1996. It was filed so that it could be considered as part of the record on Defendants' motions for summary judgment.

along with several other loans which Plaintiff has since abandoned, appeared for the first time in Plaintiff's Disclosure Report. [Doc. No. 311, § IV(18) ].

Defendants argue that they cannot be held liable for the Northtown Investors loans. In support of their argument, Defendants advance two propositions. First, Defendants argue that the Second Amended Complaint violates Fed.R.Civ.P. 8(a)(2) because it fails to give Defendants reasonable notice that they may be held liable in connection with the Northtown Investors loans. Second, Defendants argue that the addition of the Northtown Investors loans in the Disclosure Report is a *"de facto"* amendment of the Second Amended Complaint (i.e., a Third Amended Complaint). If the Disclosure Report is treated as an amendment to the Second Amended Compliant, Defendants argue that any claims relating to the Northtown Investors loans would be barred by the applicable statute of limitations because the newly added claims would not "relate back" under Fed.R.Civ.P. 15(c).

Plaintiff responds by arguing that its Second Amended Complaint satisfies Rule 8(a)(2)'s notice pleading requirement and it is not required to list specific loans in a complaint. In the alternative, Plaintiff argues that if the Second Amended Complaint fails to comply with Rule 8(a)(2), then the Disclosure Report should be treated as an amendment to the Second Amended Complaint and that amendment will "relate back" to the original Complaint under Rule 15(c).

The procedural posture of the parties' positions is not clear from their briefs. In order to clarify the appropriate standards to be applied, the undersigned will treat Defendants' pleadings on this issue as a motion to dismiss any claims based on the Northtown Investors loans for failure to properly state a claim under Fed.R.Civ.P. 8. The undersigned will treat Plaintiff's pleadings on this issue as a response to Defendants' motion to dismiss, and, in the alternative, a request for leave to amend. So characterized, the undersigned finds that loan claims based on the Northtown Investors loans are not properly pled in the Second Amended Complaint and recommends that Defendants' motion to dismiss those claims for failure to comply with Fed. R.Civ.P. 8 be granted. However, the under-

signed further recommends that Plaintiff be granted leave to amend its Second Amended Complaint to add claims based on the Northtown Investors loans. The undersigned also finds that any amendment adding claims based on the Northtown Investors loans will relate back to date of the original Complaint under Fed.R.Civ.P. 15. Thus, the undersigned ultimately recommends that claims based on the Northtown Investors loans be recognized as properly plead in this lawsuit.

### A. DEFENDANTS' MOTION TO DISMISS AND RULE 8'S PLEADING STANDARD

■ "The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." *Conley v. Gibson,* 355 U.S. 41, 48, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Pursuant to Fed.R.Civ.P. 8, a complaint need only "contain a short and plain statement of the claim showing that the pleader is entitled to relief ...." Fed. R.Civ.P. 8(a)(2). "Each averment of a pleading shall be simple, concise, and direct. No technical forms of pleading or motions are required." Fed.R.Civ.P. 8(e)(1).

> [T]he Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim. To the contrary, all the Rules require is 'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. The illustrative forms attached to the Rules plainly demonstrate this. Such simplified 'notice pleading' is made possible by the liberal opportunity for discovery and the other pretrial procedures established by the Rules to disclose more precisely the basis of both claim and defense and define more narrowly the disputed facts and issues.

*Conley,* 355 U.S. at 47–48, 78 S.Ct. 99 (footnotes omitted). *See also New Home Appliance Center, Inc. v. Thompson,* 250 F.2d 881, 883–84 (10th Cir.1957) (holding that a complaint need only contain a generalized statement of facts from which a defendant can formulate an answer).

The touchstone of Rule 8's notice pleading regime is fair notice. *Mountain View Pharmacy v. Abbott Laboratories,* 630 F.2d 1383, 1386 (10th Cir.1980). The job of a complaint is to provide the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests, without requiring plaintiff to have developed every theory and fact before the complaint is filed. *Id.; Evans v. McDonalds Corp.,* 936 F.2d 1087, 1091 (10th Cir.1991). While this rule applies to all cases, the amount of detail which must be pled to provide the opposing party with fair notice of a claim changes from case to case. *Mountain View,* at 1386–87.

> For example, a complaint for conversion or to recover on a note, can be stated in half a page. On the other hand a complaint dealing with a more complex matter, as in an antitrust action, and action to enjoin enforcement of an unconstitutional statute, an interpleader suit, or a stockholder's action will be more extended and may require more particularity [to put a defendant on notice].

*Id.* at 1387 (citing 2A James Wm. Moore et al.; *Moore's Federal Practice* ¶ 8.13 (2d ed.1979)).

In *Mountain View,* Plaintiff alleged not much more than that 13 defendants violated the antitrust laws when they sold their products. Plaintiff simply recited statutory language and gave no specifics as to the offending defendants, the injured parties, or the products involved. The Tenth Circuit found such a complaint to be in violation of Rule 8 as it did not provide the defendants with fair notice of plaintiff's antitrust claims. *Mountain View,* 630 F.2d at 1387–88. In reaching this conclusion, the Tenth Circuit cited with approval the following language from a Second Circuit opinion written by Judge Friendly: "A mere allegation that defendants violated the antitrust laws as to a particular plaintiff and commodity no more complies with Rule 8 than an allegation which says only that a defendant made an undescribed contract with the plaintiff and breached it, or that a defendant owns a car and injured plaintiff by driving it negligently." *Id.* at 1387 (citing *Klebanow v. New York Produce Exchange,* 344 F.2d 294, 299 (2d Cir.1965)).

Based on the authorities discussed above, the undersigned finds that Plaintiff should be required to list in its complaint the specific loan transactions for which Plaintiff intends to hold Defendants liable. Without specifying the individual loans at issue, Plaintiff's complaint alleges nothing more than (1) Defendants had the authority to make, approve or supervise unspecified loans, and (2) Defendants injured Sooner Federal by improperly making, approving and/or supervising unspecified loans. A pleading failing to allege specific loan transactions is not materially different from a pleading alleging that defendant owns a car and injured plaintiff by driving it negligently. In *Mountain View,* the Tenth Circuit held that such vague pleading violates Rule 8.

Plaintiff originally brought this action against 15 defendants. These defendants served on Sooner Federal's board or were officers at different and overlapping times during a ten year period. Plaintiff alleged that Defendants engaged in wrongful conduct for a period of six years, between 1982 and 1988. During this six year period, Sooner Federal made many loans. A complaint which does not at least allege which loans are at issue does not provide Defendants with fair notice of the claims being asserted against them. Without knowing which loan transactions are at issue, Defendants cannot be expected to prepare an adequate responsive pleading. Requiring Plaintiff to list the loan transactions at issue provides Defendants with fair notice and it does not require Plaintiff to plead with great factual specificity. Thus, an appropriate balance between Rule 8's fair notice and "short and plain statement" requirements is achieved.[12] The undersigned finds, therefore, that regarding claims based on the Northtown Investors loans, Plaintiff's Second Amended Complaint fails to comply with Fed.R.Civ.P. 8.

---

**12.** Three United States District Courts within the Tenth Circuit have also determined that the FDIC is required to identify in its complaint the loan transactions on which it is attempting to hold officers and directors of depository institutions liable. *See RTC v. Hess,* 820 F.Supp. 1359 (D.Utah 1993); *RTC v. Thomas,* 837 F.Supp. 354 (D.Kan.1993); and *FDIC v. Wise,* 758 F.Supp. 1414 (D.Colo.1991).

## B. PLAINTIFF'S MOTION FOR LEAVE TO AMEND

 It is clear from the transcripts of the case management conferences held by Magistrate Judge Wagner that the parties and the Court expected the November 1993 Disclosure Report to be a comprehensive statement by Plaintiffs of all claims being asserted against Defendants. In many respects, the Disclosure Report is like a one-sided pretrial order. It appears as if the parties' and Magistrate Judge Wagner's intent was that the Disclosure Report, like a pre-trial order, control the subsequent course of Plaintiff's case. *See, e.g.,* Fed.R.Civ.P. 16(e). Plaintiffs were to review the documents in its possession and identify the loans on which it would seek to hold Defendants liable. For each loan identified, Plaintiff was to (1) identify the phase, time period or aspect of the loan each Defendant was involved with; (2) identify the underlying theory of liability; (3) summarize its expert's opinion and methodology regarding damages; (4) prepare a list of fact witness as to each loan; and (5) produce copies of all exhibits supporting Plaintiff's claim with respect to each loan. It is not surprising that such a comprehensive Disclosure Report might contain new information that was not present in the original Complaint.

Amendments are to be freely allowed when justice so requires. Fed.R.Civ.P. 15(a). "Justice" ordinarily requires that leave to amend be granted unless the party seeking to amend is guilty of delay, bad faith, dilatory motive or unless the amendment would be futile or unduly prejudicial to the opposing party. *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). The Disclosure Report was served by Plaintiff less than one year after the lawsuit was filed and at a time when no discovery had taken place. The case was essentially on hold, pending preparation and service of the Disclosure Report by Plaintiff. At the time the Disclosure Report was ordered by the Court and served by Plaintiff, there is no evidence that Plaintiff was guilty of delay, bad faith or dilatory motive. Defendants have known for the past three and one half years that Plaintiff was seeking to hold them liable for the Northtown Investors loans. The undersigned finds, therefore, that justice requires and no prejudice would result from the Second Amended Complaint being amended to include the Northtown Investors loans in ¶ 38.

### 1. *Relation Back*

 Defendants argue that amendment of the Second Amended Complaint should not be permitted because an amendment would be futile. *See Foman,* 371 U.S. at 182, 83 S.Ct. 227 (holding that leave to amend may be denied if amendment would be futile). Defendants argue that the amendment would be futile because the newly added claims (i.e., claims based on the Northtown Investors loans) would not "relate back" under Fed. R.Civ.P. 15(c). Without relation back, Defendants argue that the newly added claims would be barred by the applicable statute of limitations and it is futile to allow an amendment to add claims which are barred by the statute of limitations. The undersigned does not agree and finds that the amendment adding the Northtown Investors claims does relate back to the date the original Complaint was filed.

 Under the Federal Rules of Civil Procedure, an amendment to a complaint will relate back to the date of the original complaint when the claim asserted in the amended pleading arises "out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." Fed.R.Civ.P. 15(c)(2). The theory behind this rule is that "once litigation involving particular conduct or a given transaction has been instituted, the parties are not entitled to the protection of the statute of limitations against the later assertion by amendment of . . . claims that arise out of the same conduct, transaction, or occurrence as set forth in the original pleading." 6A Charles A. Wright et al., *Federal Practice and Procedure: Civil 2d* § 1496 (1990). Because the purpose of a statute of limitations is to prevent the assertion of stale claims, its purpose is not violated by allowing, after the statute has run, the addition of claims arising out of conduct, transactions or occurrences which are already a part of active litigation. *See FDIC v. Conner,* 20 F.3d 1376, 1385 (5th Cir.1994).

The Fifth Circuit, addressing the precise issue presented by Plaintiff's motion for

leave to amend, held that under Fed.R.Civ.P. 15(c) newly-added loan claims relate back. *FDIC v. Conner*, 20 F.3d 1376 (5th Cir.1994). The undersigned finds the Fifth Circuit's analysis persuasive and recommends its application to this case. In *Conner*, the FDIC sought leave to file an amendment which added allegations that defendants' wrongful conduct caused the bank to suffer losses in connection with several loans made by defendants, but not identified in the original complaint. The defendants opposed the motion for leave to amend, arguing that the amendment would be futile. The defendants argued that the amendment would not relate back under Rule 15(c) and any claims based on the new loans would, therefore, be barred by the statute of limitations.

The Fifth Circuit rejected defendants argument with the following language: '

> In the present case, we hold that the amended complaint should relate back to the date of the original complaint. The damage allegedly caused by the loans that the FDIC seeks to include in this case arose out of the same conduct as the damage caused by the twenty-one loans listed in the original complaint. The conduct identified in the original complaint that allegedly caused the defendants to approve the loans listed in that pleading also allegedly caused the defendants to approve the loans that the FDIC seeks to include in this case through the amended complaint. The FDIC's amendment thus seeks to identify additional sources of damages that were caused by the same pattern of conduct identified in the original complaint.

*Conner*, 20 F.3d at 1386. The rationale for the Fifth Circuit's holding applies with equal force to this case.[13]

Rule 15(c) allows relation back when the claims asserted in the amendment arise out of the same "conduct, transaction *or* occurrence." Fed.R.Civ.P. 15(c). The disjunctive phrasing of these three terms makes it clear that the new claim need not arise out of the same transaction or occurrence as the original claims. As long as the new claim arises out of the same "conduct" as the original claims, the new claim will relate back under Rule 15(c). In its original and amended complaints, Plaintiff identified conduct that allegedly caused or contributed to Defendants' improper approval and/or supervision of the 35 loans listed in those complaints. This same conduct also allegedly caused Defendants to improperly approve and/or supervise the Northtown Investors loans. *See* Second Amended Complaint, Doc. No. 35. By adding the Northtown Investors loans, Plaintiff is merely seeking to identify an additional source of damage caused by the same pattern of conduct identified in the original, first amended and second amended complaints. The undersigned recommends, therefore, that Plaintiff's motion for leave to amend ¶ 38 of the Second Amended Complaint to add the Northtown Investors loans be granted.[14]

Claims based on the Northtown Investors loans will be treated as if they were in the original complaint (i.e., they will relate back). The Northtown Investors loans are, therefore, timely under FIRREA's extended statute of limitations. The issue still remains, however, whether they, along with all the other loan claims being asserted by Plaintiffs, were timely under Oklahoma law when the RTC was appointed on November 16, 1989. *See* discussion in section I(A), *supra*, and section IV, *infra*.

---

**13.** Defendants cited *RTC v. Norris*, 830 F.Supp. 351 (S.D.Tex.1993) in support of their argument that the newly added loans in Plaintiff's Disclosure Report do not relate back under Fed. R.Civ.P. 15(c). *Norris* does provide some support for Defendants' argument. The Southern District of Texas is, however, in the Fifth Circuit. Thus, *Norris'* holding was overruled by the Fifth Circuit's holding in *Conner. Conner* was decided by the Fifth Circuit after Defendants filed their briefs.

**14.** In their Answers to Plaintiff's Second Amended Complaint, Defendants all responded to ¶ 38 (i.e., the paragraph listing specific loans) with general denials. No specifics were alleged by Defendants in connection with any of the loans listed in ¶ 38. Thus, Defendants' current Answers are sufficient and no further pleading is required in light of the amendment recommended by this Report and Recommendation, unless Defendants desire to supplement their general denials with regard to the Northtown Investors loans.

## IV. WERE PLAINTIFF'S CLAIMS TIMELY UNDER OKLAHOMA LAW WHEN THE FDIC WAS APPOINTED ON NOVEMBER 16, 1989?

Whether an action is barred by the applicable statute of limitations is a question of fact to be determined by considering the evidence in each case. *MBA Commercial Construction, Inc. v. Roy J. Hannaford Co., Inc.*, 818 P.2d 469, 472 (Okla.1991); *American Ins. Union v. Jones,* 135 Okla. 101, 274 P. 478, 479 (1929). The party asserting the statute of limitations as a defense has the burden to present evidence reasonably tending to establish the time bar. *Id. Trinity Broadcasting Corp. v. Leeco Oil Co.,* 692 P.2d 1364, 1367 (Okla.1984). Thus, summary judgment on a statute of limitations defense is appropriate only when there is no genuine issue of material fact as to when the statute of limitations began to run (i.e., when the cause of action accrued) or the running of the limitations period. *See* Fed.R.Civ.P. 56.

Oklahoma law provides as follows:

Civil actions other than for the recovery of real property can only be brought within the following periods, after the cause of action shall have accrued, and not afterwards:

2. Within three (3) years: An action upon a contract express or implied not in writing . . . .

3. Within two (2) years: [A]n action for injury to the rights of another, not arising on contract, and not hereinafter enumerated . . . .

10. An action for relief, not hereinbefore provided for, can only be brought within five (5) years after the cause of action shall have accrued.

12 Okla. Stat. § 95. Under this statute, Plaintiff's negligence claims would be subject to a two year statute of limitations and Plaintiff's oral contract claims would be subject to a three year statute of limitations. It is not clear, however, what limitations period would apply to Plaintiff's breach of fiduciary duty claims. All of these limitations periods begin to run from the date the cause of action "shall have accrued." The remainder of this Report and Recommendation will discuss when each of Plaintiff's causes of action accrued.

### A. ACCRUAL OF PLAINTIFF'S NEGLIGENCE CLAIMS

Under Oklahoma law,

[t]he limitations periods in [12 Okla. Stat. § 95 begin] to run from the time the elements of a cause of action arise. The elements of a cause of action arise, that is, the cause of action accrues when a litigant first could have maintained his action to a successful conclusion.

The three elements of actionable negligence are: (1) the existence of a duty on the part of the defendant to protect the plaintiff from injury; (2) a violation of that duty; and (3) injury proximately resulting therefrom. The substantive right to damages vests when these three elements are present.

. . .

In order for a litigant to maintain a negligence action to a successful conclusion, the litigant must [be able to] allege injury or damages that are certain and not speculative. Thus, the summary judgment [motions] herein must be supported by evidence that establishes the time injuries or damages that are certain and not speculative were sustained by [Sooner Federal]. . . . At that time the alleged negligence action accrued and the time limitations in § 95(3) began to run.

*MBA Commercial,* 818 P.2d at 473–74 (internal citations omitted). *See also Marshall v. Fenton, Fenton, Smith, Reneau and Moon, P.C.,* 899 P.2d 621, 623–24 (Okla.1995); and *Stephens v. General Motors Corp.,* 905 P.2d 797, 799 (Okla.1995).

In this case, the ultimate question is this: At what point did it become definite and certain that Sooner Federal would suffer damage as a result of Defendants' negligence? *See, e.g., Wynn v. Estate of Holmes,* 815 P.2d 1231, 1233 (Okla.App.1991). In other words, a plaintiff does not have to sustain damages for the statute of limitations to begin running. Rather, the important moment in time is the moment it becomes a certainty that a plaintiff will be damaged, even if the damage will not occur for some time in the future. The requirement that damages be certain and not speculative is best illustrated by two Oklahoma Supreme Court flood cases.

*See Murduck v. City of Blackwell,* 198 Okla. 171, 176 P.2d 1002 (1946) and *City of Stillwater v. Robertson,* 192 Okla. 395, 136 P.2d 923 (1943).

In *Robertson,* the City of Stillwater built a dam in 1926 to create a lake that would provide a municipal water supply. In 1933, the City increased the height of the dam by two feet to impound more water for the City. After the dam was raised, the lake level dropped, instead of rose, because of several dry years. It was not until the spring of 1941 that abundant rains filled the lake and Plaintiff's property was flooded. Plaintiff sued the City for trespass to recover for damage done to his property. The City argued that plaintiff's claim was barred by a two year statute of limitations. The issue before the court was when did plaintiff's claim accrue—in 1933 when the dam was raised or in 1941 when plaintiff's property was eventually flooded? As with a negligence claim, the Court held that a claim for trespass to real property caused by an improvement accrues at the moment it appears that injury to the property is certain to occur.[15] *Robertson,* 136 P.2d at 924; *Murduck,* 176 P.2d at 1009. The Court held that, at the time the dam was raised, injury to plaintiff's property was certain to occur. It was obvious to everyone that once the dam was raised two feet, the lake level would rise two feet and overflow plaintiff's property. *Robertson,* 136 P.2d at 924. In other words, "it was a matter of mathematical calculation and therefore certain that plaintiff's land lying below the level of the water in the new lake would be overflowed." *Murduck,* 176 P.2d at 1009. Plaintiff's claim accrued, therefore, at the time the dam was raised, not when his property was flooded.

The plaintiffs in *Murduck* owned a parcel of farmland. The south side of plaintiffs' farmland was a natural basin or depression which could not drain on its own. In 1908, the owner of the farmland constructed a 10 inch drain that ran 3,065 feet from the center of the basin toward the Chickaskia River. The drain emptied into a small ditch which was about six to eight feet deep. The ditch emptied into the Chickaskia River and the system worked well for 28 years. In 1936,

the City of Blackwell dammed the Chickaskia River to form a reservoir to be used as a municipal water source. The Chickaskia River flooded in 1942 and flood waters filled plaintiffs' basin. When the Chickaskia River returned to normal, the flood waters trapped in plaintiffs' basin did not drain away. The evidence established that from 1937 to 1943, after the dam was constructed, silt and mud had settled in, around and over the ditch into which the plaintiff's drain emptied. The silt and mud eventually filled the ditch so full that plaintiffs' drain outlet could no longer be found. *Murduck,* 176 P.2d at 1004–1010.

The plaintiffs in *Murduck* sued the City of Blackwell and the City argued that plaintiffs' claim was barred by the statute of limitations. Relying on *Robertson,* the City argued that plaintiffs' claim accrued when the dam was built in 1936, not when plaintiffs' basin was flooded in 1942. The Court disagreed, holding as follows:

> It cannot be said that it was obvious when the dam was completed that would occur. No one could tell, or know, that would occur or where or to what extent silt or mud would settle at and around the outlet of plaintiffs' drainage tile. No one knew what had happened until the City lowered the level of the lake so as to expose the accumulated silt and mud.
>
> . . .
>
> It does not appear as a certainty that plaintiffs' damages were obvious at the time the dam was constructed. In any event, it would, under the rules stated in the decisions above cited, be a question of fact for the jury and not one for the court. We cannot say as a matter of law that plaintiffs' action was barred by the statute of limitations.

*Murduck,* 176 P.2d at 1009–1010.

The parties seem to agree that a negligence claim in Oklahoma accrues when damage caused by the alleged negligent acts is certain to occur. In the context of negligent lending by an officer and/or director of a depository institution, the parties take different positions on when damage to a depository

---

**15.** An action for trespass to real property and an action for negligence are both subject to the same statute of limitations. *See* 12 Okla. Stat. § 95(3).

institution is certain to occur. Defendants argue that damage to a depository institution is always certain to occur at the time a loan is made (i.e., when the institution parts with its money). Plaintiff argues that damage to a depository institution is certain only when it becomes clear that the borrower will not repay the loan. Plaintiff argues that the first time it became certain that Sooner Federal would not be repaid on the loans at issue was "when the collateral was foreclosed or some other disposition was made." [Doc. No. 269, p. 9].

■ The undersigned declines to adopt either of the absolutist positions advanced by the parties. The undersigned declines to find that as a matter of law a depository institution is always or never injured by an officer's or director's negligence at the time a loan is made or foreclosed. When damage to a depository institution becomes certain and not speculative is a question to be answered by looking at the facts of each loan transaction. There are no bright lines. In some instances, damages may be certain at the time a loan is made. In other instances, the fact that the depository institution will be damaged may not become certain until the loan has to be restructured and/or foreclosed. For the loans at issue, the undesigned has reviewed all the materials submitted by the parties and finds that there are genuine issue of material fact as to when the damage alleged by Plaintiff first became certain and not speculative. Summary judgment is, therefore, not appropriate on Plaintiff's negligence claims.

■ Defendants argue that the entire theory underlying Plaintiff's negligence claims is that the collateral received by Sooner Federal in exchange for the loans at issue was not as valuable or tangible as it should have been (i.e., the loans were under-collateralized). Defendants argue that "accrual at the time a loan is made" is the only accrual rule that can be applied to such a theory. Defendants argue that a depository institution is injured immediately when it parts with funds to make a loan and it receives collateral worth less than it should be worth using proper loan underwriting standards. Defendants argue that this damage can be measured by looking at the "difference in value between what [Sooner Federal] has

paid (the loan amount) and what it has received (a promise of repayment by a non-creditworthy borrower)." [Doc. No. 278, pp. 14–15].

Although there are no cases directly on point in Oklahoma, the undersigned does not believe that Sooner Federal would have been able to sue a director under Oklahoma law the moment that director made an allegedly under-collateralized loan. As discussed above, a negligence claim in Oklahoma becomes actionable only when damages are certain to occur as a result of the alleged negligence. When a depository institution's director approves and/or makes a loan to a borrower and that borrower is timely repaying the loan, the undersigned believes that an Oklahoma court would not permit the depository institution to sue the director for negligence in connection with the loan. It may be true that the depository institution has an insecure collateral position. It may also be true, however, that, despite its insecure collateral position, the depository institution will be repaid in full on the loan. How is the depository institution damaged if the loan is timely and fully repaid? Thus, it seems entirely speculative, and not certain, that a depository institution has suffered damages on a loan that is being timely repaid. Under Oklahoma law, the depository institution's negligence claims against the director would not, therefore, accrue at the time the loan was made. See FDIC v. Stahl, 89 F.3d 1510, 1522 (11th Cir.1996) (applying Florida's statute of limitations, which is very similar to Oklahoma's, and holding that negligence action accrues when loan defaults, not when the loan is made).

Defendants attempt to demonstrate that even if Sooner Federal is repaid in full on an under-collateralized loan, it suffers some damage. For example, Defendants argue that because a loan is under-collateralized that loan should command a higher interest rate, which Sooner Federal would have charged but for the negligence of Defendants. Defendants also argue that, but for their alleged negligence in disbursing certain loan proceeds, Sooner Federal would have had more capital available to loan on transactions that were less risky and more profit-

able. Defendants also argue that negligent lending causes an increase in a depository institution's reserves, which makes less capital available for lending. Defendants point to all of this and argue that, as a whole, negligent lending produces an immediate detriment to a depository institution and causes an immediate profits decline. [Doc. No. 278, pp. 14–15]. While all of this may be true, there is no record evidence to support any of Defendants' assertions. In other words, there is no evidence in the current record that any of the above-described residual damages occurred in this case or that they were proximately caused by Defendants' negligence. Defendants may present evidence on these issues at trial in an attempt to convince the jury that damage to Sooner Federal was indeed immediate and certain at the time the loans at issue were made. Defendants are not, however, entitled to summary judgment on these issues based on the record before the Court.

Defendants' limitation of Plaintiff's negligence claims to under-collateralization of loans is also unduly restrictive. In ¶ 37 of the Second Amended Complaint, Plaintiff identifies at least 17 types of negligent conduct which it alleges caused damage to Sooner Federal. Only one out of the list of 17 deals with the making of under-collateralized loans.[16] Much of the other conduct alleged in ¶ 37 to have been negligent could not have occurred until after a particular loan was made. For example, ¶ 37(*l*) alleges that Defendants "[a]llowed [Sooner Federal] to forego periodic inspections and evaluations of collateral." Paragraph 37(*l*) alleges that Defendants "[f]ailed to monitor the use of loan proceeds." Paragraph 37(*o*) alleges that Defendants "[a]llowed renewal of loans with no reduction in principal and with past-due interest capitalized." Paragraph 37(p) alleges that Defendants "[a]llowed release of collateral for inadequate consideration and failed to aggressively pursue collateral when default occurred." All of this conduct is conduct which occurs after a loan is initially made. In other words, a loan may have been properly collateralized when made and Defendants could have been negligent for failing

to conduct periodic inspections of the collateral or for inappropriately releasing the collateral at a later date. It makes no sense to apply to this type of conduct an accrual rule that focuses on when the original loan was made.

To date, discovery has not progressed with respect to Plaintiff's claims against Defendants. Thus, it is not clear from the record before the Court what negligent conduct alleged in ¶ 37 of the Second Amended Complaint is or is not applicable to each loan left in this case. Nevertheless, the thrust of Plaintiff's negligence claims is really that in the early 1980's Sooner Federal shifted from residential mortgage lending to commercial lending and Defendants were negligent in the planning, installation, execution and supervision of Sooner Federal's overall commercial lending program. [Doc. No. 31, §§ IV and VIII]. In other words, it may be that the damage resulting from a particular loan was proximately caused by negligent acts which occurred after the loan was made.

Defendants cite several cases for the proposition that it is "black letter law" that a depository institution's claim for negligence in connection with a loan made, approved and/or supervised by one of its directors accrues at the time the loan is made. The undersigned will not distinguish every case cited by Defendants. Oklahoma law governs the viability of Plaintiff's claims. To the extent that the cases cited by Defendants rely on non-Oklahoma law or law not in accord with Oklahoma's statute of limitations' jurisprudence, Defendants' reliance on those cases is misplaced. *See Stahl,* 89 F.3d at 1522.

Defendants rely on *Corsicana Nat. Bank of Corsicana v. Johnson,* 251 U.S. 68, 40 S.Ct. 82, 64 L.Ed. 141 (1919). In *Corsicana,* a bank brought an action in February 1910 against one of its directors to hold him liable for making a loan in violation of § 5200, Rev. Stat. *See* 12 U.S.C. § 84. Section 5200 prohibits a bank from loaning more than 10% of the value of its capital stock to any one entity. A director violates § 5200 only if he

---

16. In ¶ 37(h), Plaintiff alleges that Defendants "[a]llowed loans to be made without collateral, or without collateral of sufficient value or with-out performing any significant evaluation of collateral accepted." [Doc. No. 35, ¶ 37(h)].

knowingly or intentionally makes a loan in excess of § 5200's limits. At all relevant times, the value of the bank's capital stock was $200,000.00. Thus, the largest loan permitted to one entity under § 5200 was $20,-000.00. On June 10, 1907, defendant, as a director of the bank, approved what was determined to be a single loan of $30,000.00 to a single entity. *Id.* at 70–74, 40 S.Ct. 82. Section 5239, Rev. Stat., provides that a director who violates § 5200 becomes personally liable to the bank in his individual capacity for any loan made in excess of the limits in § 5200. *See* 12 U.S.C. § 93. Under §§ 5200 and 5239, the bank is not required to await the maturity of the loan. The director must immediately take the loan off the bank's hands and restore to the bank the money lent in violation of § 5200. *Id.* at 71, 86–87, 40 S.Ct. 82. Defendant argued that the bank's cause of action accrued at the time he made the loan and it was, therefore, barred by Texas' two year statute of limitations. The Supreme Court agreed, holding that the cause of action accrued when the bank, acting through defendant, "parted with the money loaned, and receiving in return only negotiable paper that it could not lawfully accept because the transaction was prohibited by section 5200, Rev. Stat." *Id.* at 86, 251 U.S. 68.

*Corsicana* is consistent with Oklahoma law. In Oklahoma, a limitations period begins to run only when all of the elements of a cause of action arise. The only elements of a § 5200 violation are (1) the making of a loan in excess of 10% of the value of the bank's capital stock, (2) to a single entity, (3) with knowledge or intent. When these elements arise, the director must take the loan off the bank's hands and reimburse the bank for the amount of the improperly made loan. All of the elements of the offense/claim arise at the time the loan is made. *Corsicana* does not establish that as a matter of law damage to a depository institution caused by the negligence of one of the institution's directors in approving, making and/or supervising a loan is always certain to occur at the time the loan is made.[17]

Defendants also rely on a series of cases from the Fifth Circuit Court of Appeals. *See FDIC v. Dawson,* 4 F.3d 1303, 1308 (5th Cir.1993), *cert. denied,* 512 U.S. 1205, 114 S.Ct. 2673, 129 L.Ed.2d 809 (1994); *RTC v. Seale,* 13 F.3d 850, 852 (5th Cir.1994); and *FDIC v. Henderson,* 61 F.3d 421, 424 n. 6 (5th Cir.1995) (citing and relying on *Seale*). *Dawson, Seale* and *Henderson* were all applying Texas law. The Texas cases and authorities cited by the Fifth Circuit in *Dawson, Seale* and *Henderson* state a view of Texas accrual law which is significantly distinct from the law of accrual in Oklahoma. The authorities cited by the Fifth Circuit suggest that a cause of action for negligence accrues at the time the negligent act is committed, not at the time damages resulting from that negligent act become certain. Using this rule, the courts in *Dawson, Seale* and *Henderson* found the negligent act to have occurred at the time the loans at issue in those cases were made. The claims were, therefore, barred. As discussed above, Oklahoma's accrual jurisprudence is significantly different from the accrual rules cited in the cases relied on by *Dawson, Seale* and *Henderson.* Oklahoma's negligence statute of limitations begins to run not when the negligent act was committed, but when damages attributable to the negligent act are certain to occur. Thus, the *Dawson, Seale* and *Henderson* cases do not support Defendants' position. Many of the other cases cited by Defendants are also based on interpretations of state accrual law that is distinctly different from Oklahoma's law of accrual.

The undersigned has reviewed the entire record submitted by the parties. The undersigned is convinced that there are material factual issues as to what negligent acts caused harm to Sooner Federal for a particular loan, when those acts occurred, and when harm caused by those acts was certain to occur and not speculative. Summary Judg-

---

**17.** *Farmers & Merchants National Bank v. Bryan,* 902 F.2d 1520 (10th Cir.1990) was discussed above. The Court in *Bryan* held that "[i]n general, a cause of action on an improper loan accrues at the time the loan is made." *Id.* at 1522. The Court was applying federal common law and not Oklahoma law. The Court also cited and relied on *Corsicana* for its holding. Thus, to the extent *Corsicana* is distinguishable, *Bryan* is distinguishable.

ment on Plaintiff's negligence claims is, therefore, not appropriate. ·

### B. ACCRUAL OF PLAINTIFF'S BREACH OF CONTRACT AND BREACH OF FIDUCIARY DUTY CLAIMS

#### 1. *Breach of Contract Claims*

█ Plaintiff alleges in its Second Amended Complaint that "Defendants contracted with [Sooner Federal] to serve as officers of the Institution, for which they received salaries and/or compensation." [Doc. No. 35, ¶ 43]. Plaintiff alleges further that the acts and omissions described in the Second Amended Complaint constitute breaches of Defendants' contracts with Sooner Federal. *Id.* at ¶ 44. Plaintiff has not presented any evidence of a written contract between Sooner Federal and Defendants. The undersigned assumes, therefore, that Plaintiff's contract claim is based on an oral contract.

In *Great Plains Federal Savings and Loan Ass'n v. Dabney,* 846 P.2d 1088 (Okla. 1993), a savings and loan sued an attorney and his law firm for breach of an oral contract. The savings and loan alleged that pursuant to an oral contract, the attorney agreed to search the records of the Grady County Clerk for a nine year period to identify any documents affecting a particular title. The attorney also agreed to prepare a written title opinion. Plaintiff alleged that the attorney failed to find a mortgage in the county clerk's records that affected the title at issue and, therefore, failed to timely address the affect of that mortgage in his title opinion. The attorney filed a motion to dismiss, arguing that the action sounded in tort for malpractice and not contract and was barred by the two-year tort statute of limitations. *Id.* at 1089–91.

The Court in *Dabney* began by recognizing that "a party may bring a claim based in both tort and contract against a professional and that such action may arise from the same set of facts." *Dabney,* 846 P.2d at 1092. However, if the alleged contract "merely incorporates by reference or by implication a general standard of skill or care [to] which a

defendant would be bound independent of the contract[,] a tort case is presented governed by the tort limitation period." *Id.* If however, the alleged contract spells "out the performance promised by defendant and defendant commits to the performance without reference to and irrespective of any general standard, a contract theory would be viable, regardless of any negligence on the part of the professional defendant." *Id.* "In other words, professional malpractice suits are controlled by the two-year tort limitation unless there is shown an express agreement by the defendant to do more than use ordinary care in the treatment or representation of plaintiff." *Id.* at 1097 (Summers, J., concurring specially).[18] *See also Flint Ridge Development Co., Inc. v. Benham–Blair and Affiliates, Inc.,* 775 P.2d 797, 799–800 (Okla.1989) (applying same standard to action against an architectural and engineering firm). Using this standard, the Court held that the savings and loan's claim sounded in contract because the attorney agreed to do more than act as a reasonable attorney in providing a title opinion. Specifically, the attorney agreed to search the county clerk's records for a nine year period and the savings and loan is entitled to sue the attorney for breach of this promise-based obligation. *Id.* at 1092.

In *FDIC v. Regier Carr & Monroe,* 996 F.2d 222 (10th Cir.1993), the Territory Savings & Loan Association of Seminole, Oklahoma brought an action against an outside auditor who had been hired to provide services to the savings and loan. The savings and loan eventually sued the auditor for breach of contract. The savings and loan argued that the auditor breached the contract by failing to timely advise the savings and loan's board of directors about mismanagement by the savings and loan's president. After suit was filed, the FDIC was appointed as the savings and loan's receiver. The auditor argued that the claim sounded in tort for malpractice and was barred by the two-year tort statute of limitations. The Tenth Circuit cited *Dabney* for the proposition that "if the alleged contract of employment merely incorporates by reference or by implica-

---

18. Plaintiff argues that *Dabney* is not entitled to precedential value because it is a plurality opinion. Plaintiff is incorrect. On the point just discussed, *Dabney* is a 5 to 3 decision, with one Justice not participating.

tion a general standard of skill or care which a defendant would be bound independent of the contract a tort case is presented governed by the tort limitation period." *Id.* at 224. Using the *Dabney* standard, the Tenth Circuit concluded that the savings and loan's action sounded in tort. The Court reviewed the letter from the savings and loan that actually engaged the services of the auditor. The Court concluded that the letter simply incorporated by reference generally accepted auditing standards and proposed nothing beyond the general standard of care for certified public accountants. In other words, the letter required the auditor to do nothing beyond what the normal duty of care would require of a certified public accountant. *Id.*

Plaintiff has alleged no specifics in connection with the alleged contract between Sooner Federal and Defendants. Plaintiff's pleadings make it reasonably clear, however, that the breach alleged amounts to nothing other than Defendants' breach of their obligation to diligently and honestly administer Sooner Federal's affairs. In other words, there is no evidence in the record that would support a finding that there was an express agreement by Defendants to do more than use ordinary care in managing Sooner Federal's affairs. Thus, under *Dabney* and *Regier* the contract action being asserted by Plaintiff would sound in tort and be subject to the two year tort statute of limitations. The accrual of these claims would, therefore, be subject to the analysis in section IV(A), *supra.*

Plaintiff attempts to distinguish *Dabney* and *Regier* by arguing that those cases apply only to professional malpractice claims against doctors, lawyers, accountants, architects and engineers. While there is some language in these case which may restrict their holdings to professional malpractice cases, Plaintiff has not provided any reason why the Court should not consider a director of a depository institution to be a "professional" or why this action against such a director should not be viewed as a malpractice action. In any event, the undersigned finds no material difference between the type of contract claim asserted by the FDIC in this case and the type of contract claim asserted by the FDIC in *Regier.*

### 2. *Breach of Fiduciary Duty Claims*

Plaintiff has also alleged that Defendants were fiduciaries of Sooner Federal and Defendants violated their fiduciary duties to Sooner Federal. [Doc. No. 35, ¶¶ 24–35]. In all cases, the existence or nonexistence of a fiduciary duty depends on the factual circumstances surrounding the parties' relationship and transactions. *First Nat'l Bank and Trust Co. of Vinita v. Kissee,* 859 P.2d 502, 510–11 (Okla.1993). A fiduciary relationship includes all legal relationships "such as guardian and ward, attorney and client, principal and agent and the like ...." *Lowrance v. Patton,* 710 P.2d 108, 111 (Okla. 1985). Fiduciary relationships are not, however, limited to specific legal relationships. The relationship may be legal, "moral, social, domestic or merely personal." *Id.* at 111–12. Under Oklahoma law, a fiduciary relationship arises anytime the facts and circumstances surrounding a relationship would allow a reasonably prudent person to repose confidence and trust in another person. *Id.* at 111; *In re Estate of Beal,* 769 P.2d 150, 155 (Okla. 1989); *Panama Processes, S.A. v. Cities Service Co.,* 796 P.2d 276, 290 (Okla.1990); *Quinlan v. Koch Oil Co.,* 25 F.3d 936, 942 (10th Cir.1994) (interpreting Oklahoma law). "[A] fiduciary relationship springs from an attitude of trust and confidence and is based on some form of agreement, either express or implied, from which it can be said the minds have been met to create a mutual obligation." *Quinlan,* 25 F.3d at 942 (emphasis original) (quoting from *Lowrance,* 710 P.2d at 112).

While the existence of a fiduciary relationship is normally a question of fact, it is well settled that as a matter of law in Oklahoma, the relationship between a director and his corporation is a fiduciary relationship. Directors of a corporation owe fiduciary duties to the corporation. *Wilson v. Harlow,* 860 P.2d 793, 797–98 (Okla.1993) (citing *Pepper v. Litton,* 308 U.S. 295, 306, 60 S.Ct. 238, 84 L.Ed. 281 (1939)); *Warren v. Century Bankcorporation, Inc.,* 741 P.2d 846, 849 (Okla.1987); *McKee v. Interstate Oil & Gas Co.,* 77 Okla. 260, 188 P. 109, 112 (1920). "The general rule is that officers and directors in control of a corporation occupy

toward the corporation and its stockholders, in respect of the business or property of the corporation, a fiduciary relation somewhat in the nature of a trusteeship ...." *Adams v. Mid–West Chevrolet Corp.*, 198 Okla. 461, 179 P.2d 147, 156 (1947). *See, e.g.,* 6 Okla. Stat. § 712.1(B) (permitting bylaws of a bank to limit the liability of directors for breaches of their fiduciary duties under certain circumstances).

In *RTC v. Greer*, 911 P.2d 257 (Okla.1996), defendant, Mr. Armstrong, Mr. Massey and others purchased several oil and gas leases with a $450,000.00 loan from People's National Bank ("PNB"). The leases and the $450,-000.00 note were eventually assigned by defendant, Mr. Armstrong, Mr. Massey and the others to Mega II Energy and Investment Corporation ("Mega II"). Mega II was a corporation formed by defendant and others. Mega II then borrowed $225,000.00 from PNB to purchase more leases. Mega II was unable to timely repay the PNB loans. So, Mega II sold some of its leases for $1.5 million and paid off its $670,000.00 + debt to PNB. Of the excess sale proceeds, $300,000 was loaned by Mega II to Mr. Armstrong and Mr. Massey. During this time period, Anchor Savings Association ("Anchor") loaned money to Standard Systems Program ("Standard"). The Standard loan was secured by individual promissory notes from Standard's limited partners, one of whom was Mega II. Mega II eventually defaulted on the Standard promissory note and quit making payments to Anchor. Anchor filed a lawsuit against defendant, as a director of Mega II, for breach of his common law fiduciary obligations. After suit was filed, Anchor was taken over by the RTC. Anchor argued that defendant breached his fiduciary obligation to Mega II by approving and/or allowing Mega II to make $300,000.00 loans to Mr. Armstrong and Mr. Massey at a time when Mega II could not pay its other debts (i.e., a form of imprudent lending). *Id.* at 259–261.

The Oklahoma Supreme Court ultimately held that Anchor, as a creditor of Mega II, could not sue defendant for breach of his fiduciary duties to Mega II. The Court held that such an action belongs to the corporation alone, not to the corporation's creditors. As a Mega II creditor, Anchor was not per-

mitted to press a claim based on defendant's breach of his common law fiduciary duties to Mega II. *Greer*, 911 P.2d at 264–65. Prior to reaching this conclusion, the Court discussed which statute of limitations would be applicable to Anchor's claim. The Court held that Anchor's breach of fiduciary duty claim "lies either in contract imposed by law or in trust created by operation of law. The former is promise-based; the later is rested on a relational duty created by the ancient rules of chancery jurisprudence." *Id.* at 262. The Court then cited several cases to illustrate these two categories.

The second category of fiduciary duty claims mentioned in *Greer* (i.e., the trust prong) deals with the imposition of a constructive trust which arises by operation of law, and is not applicable in this case. The first category of fiduciary duty claims mentioned in *Greer* (i.e., the implied contract prong) is applicable in this case. As an example of a claim based on the implied contract prong of fiduciary obligations, the Court cited *Hughes v. Reed,* 46 F.2d 435 (10th Cir.1931). In *Hughes,* the receiver of the First National Bank of Sapulpa brought an action against the bank's former directors. The receiver alleged that the directors failed to faithfully and diligently discharge their duties as directors by, among other things, making improvident loans, failing to heed warnings of the comptroller and failing to actively supervise and direct the bank's affairs. *Hughes,* 46 F.2d at 437. The directors answered, arguing that the receiver's claims were barred by the statute of limitations. The Tenth Circuit framed the issue as follows: Is the receiver's claim an action upon an express or implied contract not in writing or an action for injury to the rights of another, not arising on contract. *See* 12 Okla. Stat. §§ 95(2) and 95(3).

With the following language, the Court held that the receiver's claim in *Hughes* was an action based on an implied contract:

> The assumption of the duties of directorship in any corporation is an agreement honestly and diligently to direct the business of the corporation. [The National Bank Act] requires that each director of a national bank take an oath that he will, 'so

far as the duty devolves on him, diligently and honestly administer the affairs of such association, and will not knowingly violate or willingly permit to be violated any of the provisions of [the National Bank Act].' 12 U.S.C.A. § 73. By the relationship, fortified by the oath, [a director] agrees with the stockholders and creditors that he will honestly and diligently administer the bank's affairs. The [receiver's complaint] alleges facts which, if true, are a breach of that agreement. It has been expressly held that the liability of a director is ex contractu [i.e., from or out of a contract]. *Hughes,* 46 F.2d at 440–41.

Defendants attempt to distinguish *Hughes* by arguing that the depository institution in *Hughes* was a national bank and pursuant to 12 U.S.C. § 73, a director of a national bank is required to take an oath. Sooner Federal is a federal savings and loan, not a national bank, and there is no oath provision for directors of federal savings and loans.[19] The undersigned finds this argument unpersuasive. The Court in *Hughes* held that it is the relationship between a director and the depository institution which gives rise to the implied by law agreement. As the Tenth Circuit stated, an oath simply fortifies an agreement which is already implied by law due to the position of trust, confidence, and dominance held by a director of a depository institution. Plaintiff's breach of fiduciary duty claim is, therefore, premised on a contract implied by law. In Oklahoma, an action to enforce an unwritten implied by law contract is governed by a three year statute of limitations. 12 Okla. Stat. § 95(2); *Greer,* 911 P.2d at 262; *Hughes,* 46 F.2d at 440–41 (adopting Oklahoma's three year statute of limitations for breach of fiduciary duty claims); and *FSLIC v. Burdette,* 696 F.Supp. 1196, 1200–1201 (E.D.Tenn.1988) (holding that breach of fiduciary duty claims are quasi-contractual).

Defendants also argue that the *Dabney* rule applies to Plaintiff's fiduciary duty claims. *See* Section IV(B)(1), *supra.* That is, Defendants argue Plaintiff's breach of fiduciary duty claims do nothing other than seek to hold Defendants liable for breaches of the

duty to exercise ordinary care. Under *Dabney,* Defendants argue that such an action must always sound in tort. The undersigned does not agree. Initially, there was absolutely no mention of a fiduciary relationship or fiduciary duties in *Dabney* or any of the cases cited by Defendants as applying the *Dabney* rule. The plaintiffs in those cases were not asserting a breach of fiduciary duty claim. More importantly, both *Greer,* an Oklahoma Supreme Court case, and *Quinlan,* a Tenth Circuit case, were decided after *Dabney.* Both *Greer* and *Quinlan* describe breach of fiduciary duty claims as being based on agreements implied by law due to the relationship of trust, confidence and dominance held by directors of depository institutions. This is distinctively contract, and not tort, language. Had the Oklahoma Supreme Court intended for the *Dabney* rule to apply to breach of fiduciary duty claims, it certainly could have applied the rule to the fiduciary duty claims in *Greer.*

The two year statute of limitations in 12 Okla. Stat. § 95 provides that an action "for injury to the rights of another, not arising on contract, and not hereinafter enumerated" may be brought within two years from the date the cause of action accrues. 12 Okla. Stat. § 95(3). From its own terms, this provision extends to, but not beyond, personal torts. Claims not based on personal torts are not covered by § 95(3) unless they do not arise on contract and are not included in other subsections of § 95. Thus, § 95(3) is not applicable to breach of fiduciary duty claims because under Oklahoma law fiduciary duty claims arise in part out of an implied by law contract. *See, e.g., Lee Houston & Assoc., Ltd. v. Racine,* 806 P.2d 848, 854 (Alaska 1991) (interpreting a statute of limitations very similar to Oklahoma's).

While a statute of limitations defense is a valid defense, it is one generally disfavored by the courts. Therefore, any doubts as to which of two statutes is applicable in a given case should be resolved in favor of applying the statute containing the longer limitations period. *Williams v. Lee*

---

19. Plaintiff agrees with Defendants that there is no oath involved here. In its pleadings, Plaintiff states that its claims are not premised on any oath taken by Defendants. *See* Doc. No. 88, p. 25 n. 5.

*Way Motor Freight, Inc.,* 688 P.2d 1294 (Okla.1984); *Hughes,* 46 F.2d at 440 (citing several state cases); *Racine,* 806 P.2d at 854–55. The briefing in this case and the relevant authorities on the issue of what statute of limitations to apply to breach of fiduciary duty claims certainly create some doubts as to which statute of limitations (i.e., the two year tort statute or the three year oral contract statute) should apply. *FDIC v. Former Officers and Directors of Metropolitan Bank,* 884 F.2d 1304, 1307 (9th Cir.1989), *cert. denied,* 496 U.S. 936, 110 S.Ct. 3215, 110 L.Ed.2d 662 (1990) (reviewing the authorities and finding substantial doubt as to how a breach of fiduciary duty claim should be characterized). The undersigned has, therefore, applied the longer statute of limitations.

The choice of a three year versus a two year statute of limitations for breach of fiduciary duty claims also does not in any way violate or undermine the purposes sought to be served by statutes of limitation. "Statutes of limitation find their justification in necessity and convenience rather than in logic. They represent expedients, rather than principles. They are practical and pragmatic devices to spare courts from litigation of stale claims, and the citizen from being put to his defense after memories have faded, witness have died or disappeared, and evidence has been lost." *Chase Securities Corp. v. Donaldson,* 325 U.S. 304, 314, 65 S.Ct. 1137, 89 L.Ed. 1628 (1945). This case is not like the personal injury action. "Actions like the present one involving economic loss are often based largely on documentary evidence not unaided recollections which quickly grow stale." *Racine,* 806 P.2d at 855. For all of the foregoing reasons, the undersigned finds that Plaintiff's breach of fiduciary duty claims are governed by the three year statute of limitations found at 12 Okla. Stat. § 95(2).

From a review of the authorities in Oklahoma, it appears that the four elements of an actionable breach of fiduciary duty claim are: (1) the existence of a fiduciary relationship, (2) a duty arising out of the fiduciary relationship, (3) a breach of the duty, and (4) damages proximately caused by the breach of duty. Damages are an essential element of a breach of fiduciary duty claim. As discussed earlier in section IV(A), *supra,* limitation periods in Oklahoma do not begin to run until all of the elements of a cause of action arise. As with a negligence claim, a breach of fiduciary duty claim will not, therefore, accrue for statute of limitations purposes until damages are certain to occur and are not merely speculative. The analysis in section IV(A), *supra,* is applicable to Plaintiff's breach of fiduciary duty claims. As with Plaintiff's negligence claims, the undersigned is convinced that there are material factual issues as to what breaches of fiduciary duty caused harm to Sooner Federal for a particular loan, when those acts occurred, and when the harm caused by those acts was certain to occur and not speculative. Summary Judgment on Plaintiff's breach of fiduciary duty claims is, therefore, not appropriate.[20]

## CONCLUSION

The Northtown Investors loans are properly in this lawsuit. Plaintiff is not estopped from making its current accrual arguments. In Oklahoma, Plaintiff's negligence and contract claims are subject to the two year statute of limitations in 12 Okla. Stat. § 95(3). Plaintiff's breach of fiduciary duty claims are subject to the three year statute of limitations in 12 Okla. Stat. § 95(2). In Oklahoma, the statute of limitations on Plaintiff's negligence claims and breach of fiduciary duty claims began to run once it became certain and not speculative that Sooner Federal would suffer damages as a result of Defendants' negligence and/or breaches of fiduciary duty. The undersigned is convinced that material questions of fact exist as to what breaches of duty caused harm to Sooner Federal for a particular loan, when those breaches occurred, and when the harm caused by those breaches was certain to occur. Therefore, the undersigned recommends that Defendants' motions for summary judgment de ***DENIED.***

**20.** The undersigned wishes to make it clear that this Report and Recommendation in no way addresses the validity of Plaintiff's breach of fiduciary duty claims under Oklahoma law. The only issue presented by Defendants' motions was what statute of limitations to apply to a properly stated claim for breach of fiduciary duty.

### TIME FOR OBJECTIONS

If the parties so desire, they may file with the District Judge assigned to this case, within 10 days from the date they are served with a copy of this Report and Recommendation, objections to the undersigned's recommended disposition of Defendants' motions. *See* 28 U.S.C. § 636(b) and Fed.R.Civ.P. 72(b).